We'll hear the last case on the calendar, Kernan v. New York State. May it please the court, Leighton Burns for the appellants, and reviewing the lower court's decision, and the things that we will discuss about it, it becomes patently clear to me, and I hope the court, that a way to rectify whatever is done with that decision is to allow the appellants to replead. You may say that replead, we're talking about an amended complaint. That may be true by name. However, it is the first complaint in this case, because the initial drafting complaint was turned back to the plaintiffs by the court, saying it was too long, I won't read it, give me another one, so they amended the complaint. That's why the amended complaint is virtually the first complaint, and to replead would be able to ... But the judge made a ruling, right, that it didn't satisfy notice pleading requirements? The judge said that it did not satisfy notice pleading requirements, so it was a ruling that that complaint could not stand. I'm not quite sure she didn't also add that it was too large, and she wasn't going to read it. That was what I was related. I was not one of the counsels then, Your Honor. In drafting this complaint, they cut that down a great deal, and many things were found about it by the lower court. The basic thing the lower court found was that the conviction of Kernan of allowing someone to be employed in the insurance business who had a felon was the basis for all of the state's activities against the insurance company and Oriska Corporation. Oriska Corporation owns Oriska Insurance Company, it's true, they're two different people. But a repleading will clearly show that, number one, the conviction which is talked about is not completely final yet. It is still subject to a quorum nobis proceeding, which has a place in this court itself. The other part of it— Your position is that a conviction isn't complete until after a quorum nobis has been filed and decided? After the conviction, Your Honor, that was the second point. The insurance department examined Mr. Kernan and found, based upon the conviction, that he was untrustworthy and could not be involved in the insurance company in any way, even his ownership of it, of Oriska Corporation. The actual issue has been appealed to the Supreme Court of Oneida County in an Article 78 proceeding. However, the lower court in this case reached into the Article 78 proceeding and extracted a totally immaterial part of it, a part which involves the financial stability of Oriska Insurance Company. It does not involve the evaluation of the committee's finding of Mr. Kernan's trustworthiness. That indeed is still pending in Oneida County and is to be addressed by the court. What is the claim? What is your client's claim? What is the— What is the claim? The claim is that—and it's fairly accurate from all the history—that because of this conviction, he is found untrustworthy and basically cannot become involved in either the running or legal representation of the insurance company, nor can he be— He's been disqualified from participating in the insurance industry because of his conviction. Because of their finding, which is— Well, and what is unlawful about that? How are his rights violated by that? First of all, he was not guilty. It has been known after the lower court's proceeding, Your Honor, that— The conviction stands, right? We can't second-guess the conviction as long as it is on the books. The lower court's decision on this matter preceded a finding by the insurance department that certain evidence had been concealed from him that made him innocent, and it had been spoliated at the same time. They destroyed the evidence that would have cleared this whole matter up in his favor. And as a result, the company is being—he's even being asked to get rid of the ownership. Nothing to do with the involvement. He can't even own the company, he says. His involvement before the conviction was attempted was an extremely personal key to the whole operation. He was the attorney, he was the president, and he was keyed into the entire operation. This company has now, and had after that time, a unique apprenticeship program, training apprenticeship program for minority people, which he implemented and was ready to install. That has been stopped because the company cannot issue new bonds. It cannot operate because of this alleged finding of his untrustworthiness. Simply repleting this can clarify it, I believe, Your Honor, clarify what has been mistaken at the lower court and what the present court can evaluate as a legitimate case under the discriminatory acts. Thank you. All right. We'll hear from the State. Good morning. May it please the Court, Andrew Rhys-Davis representing the Department of Financial Services and its employees. The district court's judgment should be affirmed because there was no plausible claim pleaded and there's been no proposed amendment that would result in a plausibly pleaded claim. There are several dispositive defects, but I'll touch on the most straightforward route to affirmance. Taking first these equal protection and Title VI claims that are brought on behalf of these minority-owned businesses that allegedly would buy insurance from Mr. Kernan but for the enforcement action that was taken by the Department. Now, regardless of what happens with the criminal conviction, the record reflects Mr. Kernan admitting in front of Judge Scullin that he let a known felon, a fraudster at that, participate in the insurance business. And in light of that, there is nothing in this complaint that shows that actually the Department took its enforcement action for the covert purpose of intentionally discriminating against these minority-owned businesses as opposed to doing it because Mr. Kernan had admitted that he allowed a known felon to engage in the insurance business. Second, the due process claim fails because there's really nothing pleaded to support it. It's just formulaic recitations of the cause of action. And, in fact, the record shows that everything that the Department has done was accompanied by notice and administrative hearings and then followed by an opportunity for state court review. There was a FOIL request in that case. This case, did that go to your department or somewhere else? It went to the Department of Financial Services, Your Honor. Okay. And I was about to get to that and why that doesn't help them, wouldn't help them plead a plausible claim either. At base, the claim is that the Department of Financial Services was in an unlawful conspiracy with the Department of Justice and the Illinois and Florida insurance regulators to, in some way, violate Mr. Kernan's rights. But just saying that regulators cooperate or coordinate obviously doesn't plead an unlawful conspiracy. And this freedom of information exchange doesn't help them either. You know, the theory is that there was exculpatory evidence in the possession of the California insurance regulator, and then it's positive that they passed it to the Department of Financial Services and it wasn't turned over to Mr. Kernan. I mean, that fails at every step. As Judge Scullin said when he denied the Coram Nobis petition, there's no reason to think that this California file ever included exculpatory evidence. And when we think about it, the offense that Mr. Kernan was convicted of was knowingly having a known felon engaged in the insurance business. That's a crime that turns on his own knowledge. And so nothing in this file could have helped him there. And he admitted in front of Judge Scullin during his plea allocation that he was, in fact, guilty of permitting a known felon to work in the insurance business. The 2009 investigation, were you prohibited from turning over that file to Mr. Kernan? Was the department prohibited, Your Honor? Yeah. No, Your Honor, but I want to get to that, too, because all that's being relied upon to support this idea that the department ever had this file is a reference in an affidavit from an employee of the California insurance department who just says that in 2004 she conversed with some people at the department and that some parts of the file were turned over to the Illinois and New York regulators. So the first point I was talking about, we have no reason to think there was anything exculpatory in this file. That wasn't my question. My question was, you had parts of this file, apparently. And I just want to know why it wasn't turned over. It's, like, not allowed? Was it required? No. In fact, if the department is working with another regulator and knows that it has exculpatory information, the standard working procedure would be to turn it over. Your answer is that you had no obligation to turn it over because it wasn't exculpatory information. Well, if we had it. Okay. The problem, Your Honor, is there's several levels of unsupported speculation here. And really, just to go back to the point I was beginning with, the idea that there was exculpatory evidence, the investigation was into whether this insurance company was writing bad workers. I don't get your answer. You didn't have this file, or you did have this file. What's the answer? You had the file? The answer, Your Honor, is that after all this time, nine years before the case was filed, now 13 years, we haven't been able to reconstruct which bits of it the insurance department in New York might have had. Okay. Thank you. And so I'm just, the points I'm making are, first of all, the idea that there was exculpatory evidence in this file doesn't make any sense, given that the offense actually was something that Mr. Kernan has admitted that he did. Now, the investigation was actually into whether this insurance company was writing bad workers' comp policies and writing them in States where it wasn't authorized. And the theory, as we understand it from the Coram Nobis petition, is that this evidence would have shown that actually it was this known felon, Mr. Anderson, who was doing the bad things. But that's not exculpatory. That just shows the damage and the harm that flowed from Mr. Kernan permitting a known felon to be engaged in the insurance business. Could I just ask you about the Article 78 proceeding to get the license back? That was decided against him. Did he appeal that to the New York Appellate Division or a court of appeals? Your Honor, actually it hasn't been decided. It is still pending before Supreme Court in Oneida County. There was a hearing into whether the department had been properly served. The finding was the department had not been properly served, but that failure was excused, and at this point the parties are waiting for Supreme Court to issue a scheduling order for the department actually to answer that Article 78 proceeding. If I could just wrap up on this question about the FOIL response. Of course, the FOIL response doesn't actually say the department has destroyed anything. All it says is documents of this age would ordinarily have been destroyed under the department's standard document retention policy, but this document hasn't been destroyed, so here it is. And then finally, of course, the reason that there is no Brady obligation here is that Mr. Kernan wasn't prosecuted by the Department of Financial Services. He was prosecuted by the United States Attorney for the Northern District of New York, and it was, in fact, the U.S. Attorney's Office that represented to him, as you would expect, that all Brady materials had been turned over, that documents on the district court docket, document 94.1 at page 1973. The theory is that this is a conspiracy between the two departments to deprive him of this access to this exculpatory information, right? That's the theory. That's the theory, but it's not plausible, and for the reasons I've explained, there's really no factual basis for it, and so no reason to allow him to put this into an amended pleading. Unless the court has further questions, I'd ask that the district court's judgment be affirmed. Thank you. Mr. Burns, rebuttal. A word or two, Your Honor. On the evidence that the Department of California Insurance Department turned over to the state people clearly showed and exonerated Mr. Kernan. We tried to get that evidence from California, and judicially it was determined that it was confidential, that nobody could have it. But the investigator clearly said what it said, and it was that he was innocent. And she also said it was turned over to the state of New York, who was prosecuting him at the time. I just wanted to ask you a question about the attempted second amended complaint. The district judge said no because it was too late. Did you offer reasons for being late? For the second amended complaint? Yeah. One is that we never had an opportunity to amend the initial complaint. Okay, I got that argument. The second is that much has happened, Your Honor, significant happenings have occurred that ought to be considered. One. I'm asking, did you offer the district judge reasons why you didn't meet the filing deadline? I don't know. I was not the counsel, Your Honor, at that time. But I can't speak on that issue. But fundamentally, when we found that it was turned over to the state, we used FOIL exploration and found out from the state that they had it, but they had destroyed it. And that's what we say is the wrongful part of the state's activities. They should not have destroyed it. And as a result, it should not be used against them.